**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MARCELLUS H. BAKER,            )
                               )
                            **Plaintiff,**     )
                               )
v.                             )     Case No. 06-2168-KHV
                               )
                               )
VIA CHRISTI REGIONAL           )
MEDICAL CENTER,                )
                               )
                            **Defendant.**     )
_____)

**MEMORANDUM AND ORDER**

Plaintiff Marcellus H. Baker filed suit against his former employer, Via Christi Regional Medical Center ("Via Christi"), for race discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #73) filed March 19, 2007. For reasons stated below, the Court sustains the motion.

**Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,

912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

In responding to defendant's motion for summary judgment, plaintiff does not comply with the local rule which governs the summary judgment process. See Plaintiff's Response To Defendant's Summary Judgment (Doc. #76) filed April 17, 2007. D. Kan. Rule 56.1 states:

> A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

D. Kan. Rule 56.1. Although plaintiff purports to dispute a number of defendant's statements of material facts, he does not refer with particularity to those portions of the record on which he relies. *Pro se* litigants should not succumb to summary judgment, however, merely because they fail to comply with technical requirements involved in defending such a motion. See Woods v. Roberts, 47 F.3d 1178 (Table), 1995 WL 65457, at *2 (10th Cir. Feb. 17, 1995); Hass v. U.S. Air Force, 848 F.Supp. 926, 929 (D. Kan. 1994). The Court has therefore diligently searched plaintiff's brief and

the summary judgment record to determine whether genuine issues of material fact exist. After a careful review of the record, the Court finds that it must deem all of defendant's facts admitted for purposes of defendant's summary judgment motion. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

## Facts

Plaintiff is an African-American male. On March 4, 2002, plaintiff completed an application for employment with Via Christi. Plaintiff stated that he "started school" as the reason that he left his employment at Recreation Vehicle Products, Inc. ("RVP"). In fact, RVP had discharged plaintiff on October 19, 2001 because he failed a drug test. In response to the application direction to list all criminal convictions, plaintiff wrote that "over 16 years ago I got in trouble for an assault but have had no trouble with the law since." Plaintiff's Response (Doc. # 76) at 14. In fact, in 1984, plaintiff was convicted of rape and aggravated burglary for which he served nine and one-half years in prison. Plaintiff certified on the application that the information he provided was complete and correct, and that Via Christi could terminate his employment without liability for false statements or omissions on the application.

In March of 2002, Via Christi hired plaintiff as a Patient Care Technician at its St. Francis Campus in Wichita, Kansas. Via Christi was unaware that plaintiff had provided false statements and omitted information on his application with respect to his criminal background and reason for leaving his employment with RVP. Via Christi would not have hired plaintiff if it had known that plaintiff had been convicted of rape and aggravated burglary, that RVP fired him because he failed a drug test or that he provided false statements and omitted material information on his application.

As a new Via Christi employee, plaintiff reviewed the employee handbook which included equal employment opportunity, anti-harassment and conflict resolution polices. The Via Christi anti-harassment policy provides that Via Christi "promote[s] a productive work environment, free of discrimination and inappropriate conduct by any employee . . . or any person," and that "[b]ehavior which harasses, disrupts, or interferes with another's work performance or that creates

an intimidating, offensive or hostile environment will not be tolerated." The policy further states that Via Christi will promptly investigate any complaint and will take corrective action against any person engaging in conduct in violation of the policy. The policy also provides that employees must cooperate in an investigation. Memorandum In Support Of Defendant's Motion For Summary Judgment ("Memorandum In Support") (Doc. #74), Brogden Decl., Exh. A.

On September 25, 2002, a manager reported to the Via Christi human resources department that some young female employees were having problems with plaintiff. The human resources department conducted an investigation and summarized the witnesses' statements as follows:

–Several female employees reported being uncomfortable around [plaintiff] based on his comments and tone of voice.

–[Plaintiff] was asking a lot of forward questions to three female employees who were between the ages of 18 and 21. Examples included asking one if he could swim in the hot tub at her apartment, and asking another about her fiancée, looking her up and down and commenting that the fiancée was a lucky man.

–[Plaintiff] was persistent about trying to take these young women to lunch. He offered to pay for lunch for one of them in the cafeteria, but she declined. The next time, he paid for her lunch before she got to the register, saying, "It is wrong when a girl has to pay for her own food."

–[Plaintiff] was overly complementary to these young women about their physical appearance, making comments such as "you've got it going on," saying they were "good looking" or "beautiful," and telling one employee he had been watching her since she had been on the floor.

–[A] month earlier the young female relative of a patient had complained to the hospital that [plaintiff] had been staring at her and followed her to the parking lot when she left.

Memorandum In Support (Doc. #74), Brogden Decl., Exh. B. The human resources department concluded that plaintiff had created an uncomfortable working environment for some co-workers, but that these co-workers had not communicated to plaintiff that his actions and statements made them feel uncomfortable. In early October of 2002, plaintiff's manager spoke with plaintiff about the behaviors that made other employees uncomfortable and set forth behavior expectations.

In the fall of 2002, a co-worker told plaintiff that she had heard other co-workers refer to him as a nigger. Memorandum In Support (Doc. #74), Plaintiff's Dep. at 53-57, 61. Plaintiff never heard

anybody call him or refer to him as a nigger.

In March of 2003, a patient complained that she felt plaintiff was making advances toward her and lingering in her room. A charge nurse discussed the complaint with plaintiff. He said that he was acquainted with the patient because she had come to plaintiff's house with his son. Plaintiff said that he was just trying to be friendly and supportive, and that he had suggested to the patient that they could discuss their diabetes if she came to his house again. The charge nurse advised plaintiff to keep his conversations with patients on a professional level and to maintain professional relationships while at work. Plaintiff said he understood and that he did not intend any inappropriate advances toward the patient. Memorandum In Support (Doc. #74), Lindahl Decl. ¶ 2 and Exh. A.

On May 28, 2003, Heidi Haskins, a 20-year-old female employee, made a written complaint about plaintiff. Haskins alleged that Heidi Mason, a 22-year-old female employee, had told Haskins that plaintiff had been talking to her and asked where she worked so he could visit her in the hospital. Later that night plaintiff came to their work area. He told them they "look so good." He asked them questions such as "what is the perfect date to you?" and "do you know how good you look?" He stayed in their work area for over two hours. Plaintiff then asked Mason to walk him to his car. Mason said no, but agreed to walk him down the hall. Mason soon returned to attend to a patient. Plaintiff then called Haskins from one of the hospital entrances and asked to speak with Mason. Haskins told plaintiff that Mason was with a patient. Plaintiff became agitated and said, "I didn't know she was gonna fucking leave me like this. I don't even know where my car is!" Haskins told him to have security help. Plaintiff told her, "All I wanted was a friend, you know? You could be my friend, but you're married." Haskins told him to go home. Haskins and Mason then called hospital security. Plaintiff apparently went home, but he called Mason again that night. Haskins and Mason reported that plaintiff made them feel "uncomfortable" and "nervous," and they found his behavior inappropriate. Memorandum In Support (Doc. #74), Brigden Decl. ¶ 7 and Exh. D.

The human resources department investigated the incident and concluded that plaintiff had improperly remained in a clinical area after his work hours, made inappropriate comments about

5

physical appearance, asked inappropriate questions, and exhibited behavior that made two young female employees feel "more than uncomfortable." The human resources department found that neither Mason nor Haskins had told plaintiff that they found his comments and questions unwelcome or inappropriate.

During the investigation in May and June of 2003, plaintiff apparently did not dispute the findings of the human resources department investigation. At his deposition, however, he described the incident as follows:

> And they started talking and next thing you know they was talking sexual talk about one of them having anal intercourse with this guy and I was like, whoa, wait a minute, I'm not into this conversation so I'm gonna' go. And she was like, no, you don't need to go and approached me and we were right – 'cause I had made it back to the entrance way of the room and then she kept looking at the other girl and then she just brought her hand down and touched me and I was like, whoa, and she was like, oh, just come see me later.

Memorandum In Support (Doc. #74), Plaintiff's Dep. at 62-63.

The human resources department recommended that plaintiff's manager tell him to immediately discontinue actions, questions, or comments that were or could be perceived as forward or personal.

On June 16, 2003, plaintiff's manager issued him a performance management form which stated as follows:

> During the first week of May, you had completed your shift on 8SW but you failed to leave the hospital. Instead, you went to the Rhythm Central station and exhibited behaviors that made two employees feel quite uncomfortable. Questions regarding the age and marital status of two individuals were asked by you. Both individuals were of the opposite sex. Remarks regarding ones age and marital status [are] inappropriate, [and] whether negative or positive, were perceived to be forward. In this situation, it was perceived as a negative comment. The employees felt that your behavior was inappropriate.

Memorandum In Support (Doc. #74), Brigden Decl., Exh. F. The performance management form stated that plaintiff was to complete an Employee Performance Management Action Plan, meet with his manager to discuss and finalize his Plan and meet with an Employee Assistance Program counselor. The Performance Management Form stated that Via Christi would not tolerate further unacceptable behavior of this nature and that such behavior could result in additional action up to

and including termination of employment.

On July 2, 2003, plaintiff's manager discussed with plaintiff a proposed plan of action to meet the standards and expectations outlined in the Performance Management Form.  Plaintiff agreed that he would keep to himself unless it had to do with work and not engage in small talk.  Plaintiff's Dep. at 67-68; Memorandum In Support (Doc. #74), Brigden Decl. ¶ 10 and Exh. G.

In February of 2005, a Via Christi manager told the human resources department that one of her young female employees had reported that plaintiff was making sexual advances toward her.  The employee reported that since July of 2004, plaintiff had been making sexual comments to her such as "I love you" and "Let me kiss you through your pants."  She said that plaintiff had asked her to have sex with him and said how great it would be if she did.  When she told plaintiff that she was engaged, he said he was "better" than her fiancé and asked her, "Don't you want the big one?"  She reported that plaintiff would follow her into patients' rooms, come up behind her, press his genitals up against her, and try to kiss her neck.  She had told him he was being inappropriate and asked him to stop, but he continued.  Memorandum In Support (Doc. #74), Kennard Decl. ¶ 2.

The human resources department interviewed other witnesses who corroborated parts of the complaint.  Memorandum In Support (Doc. #74), Kennard Decl. ¶ 3.  On February 16, 2005, Sheri Kennard, a human resources consultant, and Theresa Mason, a Via Christi manager, interviewed plaintiff.  Kennard asked plaintiff if he had asked anyone at Via Christi to have sex with him, whether he had ever told anyone she needed "the big one" and whether he had asked anyone about sex with her husband or boyfriend.  Plaintiff denied saying any of these things and asked Kennard who had told her that.  Kennard replied that she had talked to several people, but she would not give him the names.  Plaintiff then said a co-worker had made sexual comments to him and touched him. Kennard asked him who, but plaintiff said he was not going to give names unless she gave him the names of employees who had talked about him.  Plaintiff stood up and said he was leaving to get a lawyer.  Kennard told him that if he left the room she would consider that his resignation.  Plaintiff said that Kennard had already decided that he was guilty.  He told her that co-workers had called him

7

a nigger, but would not say who. Plaintiff again said that he was going to leave and get a lawyer. Kennard told him that if he left he would have to turn in his badge. Plaintiff threw his badge on the table. Mason asked plaintiff to sit down and told him that he needed to cooperate. Kennard told plaintiff that his continued standing was intimidating and that if he continued to stand she would call security. He said she should go ahead and call security. Kennard picked up the phone, and plaintiff walked out the door. Memorandum In Support (Doc. #74), Kennard Decl. ¶ 4 and Exh. A; Plaintiff's Dep. at 86-91. Plaintiff knew that if he walked out that would end his employment, but he "didn't care." Plaintiff's Dep. at 90.

On February 16, 2006, Via Christi fired plaintiff for misconduct and violation of company policy: in particular, failing to cooperate in an investigation and walking out of an interview. That same day, Via Christi learned that plaintiff had previously been convicted of rape and aggravated burglary, which was contrary to the information he provided in his application. Via Christi would have discharged plaintiff for this reason even if it had not already discharged him. Further, if plaintiff had not already been discharged, Via Christi would have discharged him for violating anti-harassment policy upon completion of its investigation.

During discovery in this lawsuit, Via Christi learned that plaintiff's previous employer had fired him because he failed a drug test. If plaintiff had still been employed when Via Christi learned that he falsified his employment application about the reason he left his previous job, it would have fired him.

On February 20, 2005, plaintiff wrote Via Christi a letter alleging that (1) he was sexually harassed at Via Christi, (2) in late January or early February of 2005, he had witnessed a staff member inappropriately touching a dying man and (3) a Via Christi nurse used racial slurs about him. On March 23, 2005, Via Christi Director of Human Resources Claudio Ferraro responded to plaintiff's letter. Ferraro wrote that because plaintiff had refused to provide information about the allegations, Via Christi could only note the concerns in his file. Plaintiff's Dep. Exh. 1. Ferraro also cautioned plaintiff that "any information you decide to divulge can be considered retaliatory and

may violate the Federal HIPAA laws."[1] Id.

On November 28, 2005, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On the EEOC charge, plaintiff marked the boxes for discrimination based on retaliation and "other (specify below)," and then wrote as follows:

> I made complaints of sexual harassment and during the course of investigating these matters the employer's Human Resources Representative displayed very intimidating behavior toward me in retaliation for my complaints which led to my self-termination. I believe my self-termination amounts to a constructive discharge. I also believe that this employer's March 23, 2005 letter to me is retaliatory and attempts to intimidate me for my complaints of sexual harassment.
>
> I believe I have been subjected to the above-described behavior in violation of Title VII of the Civil Rights Act of 1964, as amended.

Complaint (Doc. #1) Attachment. Plaintiff's EEOC charge does not allege discrimination based on race, color, national origin or sex. On April 5, 2006, the EEOC issued a Dismissal and Notice of Rights which stated that the EEOC was unable to conclude that Via Christi violated Title VII.

On May 1, 2006, plaintiff filed suit against Via Christi, alleging that it (1) discriminated against him on the basis of race, (2) maintained a hostile work environment based on sex and (3) retaliated against him for protected activity. Via Christi seeks summary judgment on all claims.

## **Analysis**

### **I.    Race Discrimination**

Via Christi argues that it is entitled to summary judgment on plaintiff's claim of Title VII race discrimination. Specifically, defendant argues that (1) plaintiff did not allege race discrimination in his EEOC charge and thus failed to exhaust administrative remedies; and (2) plaintiff cannot establish an adverse employment action or hostile work environment based on race.

Defendant first asserts that the Court lacks jurisdiction over plaintiff's Title VII race discrimination claim because he has not exhausted administrative remedies. Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII. Simms v. Oklahoma,

---

[1] HIPAA refers to the Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1320d et seq., which includes provisions for patient confidentiality.

9

165 F.3d 1321, 1326 (10th Cir. 1999). To exhaust administrative remedies, a plaintiff generally must present his claim to the EEOC or authorized state agency (in Kansas, the Kansas Human Rights Commission, "KHRC") and receive a right-to-sue letter based on that charge. Id. at 1326. The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b). The charge tells the EEOC or KHRC what to investigate, provides it the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997). The requirement to present claims in an EEOC or state agency charge as a prerequisite to bringing suit serves the dual purposes of ensuring the administrative agency has the opportunity to investigate and conciliate the claims and of providing notice to the charged party of the claims against it. See id.; Bland v. K.C.K. Cmty. Coll., 271 F. Supp.2d 1280, 1283 (D. Kan. 2003). Plaintiff must have raised before the EEOC or KHRC every issue he now brings, or any additional claim must be "reasonably related" to the claims that he did bring before the EEOC. See Jones v. Denver Post Corp., 203 F.3d 748, 755 (10th Cir. 2000) (citing Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir.1997)).

On November 28, 2005, plaintiff filed his administrative charge alleging only sexual harassment and retaliation; the charge did not allege race discrimination. Defendant argues that plaintiff has thus completely failed to exhaust administrative remedies with regard to any race claim under Title VII.[2] Plaintiff does not respond to defendant's argument. A review of the charge reveals no mention or suggestion of race discrimination. Further, plaintiff's allegation that a nurse told him

---

[2] Defendant further points out that in a deferral state like Kansas, an administrative charge must be filed within 300 days of the allegedly unlawful act. 42 U.S.C. § 2000e-5(e)(1); Peterson v. City of Wichita, 888 F.2d 1307, 1308 (10th Cir. 1989). Compliance with the 300-day filing requirement is a prerequisite to filing a Title VII lawsuit. Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1310 (10th Cir. 1999), implicitly overruled on other grounds, Boyer v. Cordant Techs., 316 F.3d 1137, 1140 (10th Cir. 2003). Plaintiff's race discrimination claim is based on allegations that a co-worker told him in late 2002 that she had heard other co-workers refer to him with a racial slur. Plaintiff filed his EEOC charge on November 28, 2005, over one thousand days after the alleged unlawful act. Accordingly, the charge was not timely filed with respect to the race claim.

in late 2002 that co-workers referred to him with a racial slur is not reasonably related to his claims of sexual harassment or retaliation. See Jones, 203 F.3d at 755. The Court finds that defendant is entitled to summary judgment on plaintiff's Title VII claim of race discrimination.[3]

**II.     Sexual Harassment**

Plaintiff alleges sexual harassment based on two incidents: (1) in May of 2003, a female coworker grabbed his buttocks one time and (2) in early 2005, a different a coworker touched a patient's penis in plaintiff's presence. Defendant asserts that it is entitled to summary judgment on plaintiff's Title VII sexual harassment claim because he did not exhaust administrative remedies; and even if he did, he has not produced evidence of a hostile work environment.

A.     Exhaustion Of Administrative Remedies

Defendant asserts that this Court lacks jurisdiction over plaintiff's claim of sexual harassment because he did not allege sex discrimination or sexual harassment in his EEOC charge. As set out above, the EEOC charge must at a minimum identify the parties and "describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Although plaintiff did not mark the box labeled "sex" on the EEOC charge, he wrote that he "made complaints of sexual harassment" and that he believed that defendant retaliated against him for those complaints. This is sufficient to constitute a charge of sexual harassment. See Jones, 203 F.3d at 755 (recognizing limited exception to Title VII exhaustion rule when unexhausted claim is for discrimination like or reasonably related

---

[3] Plaintiff has not asserted a race discrimination claim under 42 U.S.C. § 1981. Accordingly, the Court cannot consider any such claim. See Hullman v. Bd. of Trustees of Pratt Cmty. Coll., 950 F.2d 665, 667 (10th Cir. 1991) (claim not preserved in pretrial order is waived); Fed. R. Civ. P. 16; D. Kan. Rule 16.2(c). Defendant points out that even if plaintiff claimed race discrimination under Section 1981, such a claim would fail because plaintiff fraudulently entered an employment relationship by misrepresenting his criminal and employment histories. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1137-40 (9th Cir. 2000) (job obtained by material misrepresentation not right upon which Section 1981 suit can be based); Wilson v. Wesley Med. Ctr., No. 01-2535-JWL, 2002 WL 31163590, at *4 (D. Kan. Aug. 28, 2002) (void or voidable contract cannot form basis of Section 1981 claim, even though defendant may not have known contract was void or voidable when parties entered into it); Alexander v. Unified Sch. Dist. No. 259, No. 92-1550, 1993 WL 544279, at *7 (D. Kan. Dec. 30, 1993) (recovery under Section 1981 barred where employer discovered after-acquired evidence that plaintiff had misrepresented his driving record and prior criminal conviction to conceal them from employer).

to allegations of the EEOC charge).

### B. Prima Facie Case Of Hostile Work Environment Based On Sex

Plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a "hostile or abusive work environment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). To prevail under a hostile work environment theory, plaintiff must show that sexually-oriented conduct had the purpose or effect of unreasonably interfering with his work performance or created an intimidating, hostile or offensive working environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998). To establish this claim, plaintiff must show both that the conduct to which he was subjected was "severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive," and that he "subjectively perceive[d] the environment to be abusive." Harris 510 U.S. at 21. The existence of such an environment can only be determined by looking at the totality of the circumstances present in the workplace, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.; see also Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Defendant asserts that it is entitled to summary judgment because plaintiff has not shown that the harassment was sufficiently severe or pervasive to create an abusive working environment. As noted, plaintiff alleges two incidents of harassment: (1) a female coworker grabbed his buttocks one time in May 2003 and (2) a different a coworker touched a patient's penis in plaintiff's presence in 2005. These two discrete and unrelated incidents, even if assumed to be true, are insufficient to state a legally actionable sexual harassment claim under Title VII. See Carrasco v. Boeing, 190 Fed. Appx. 650, 654-55 (10th Cir. 2006) (question is whether reasonable jury could find that plaintiff's workplace was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter conditions of employment). Defendant is entitled to summary judgment on

plaintiff's sexual harassment claim.[4]

### III.    Retaliation

To establish a prima facie case of retaliation under Title VII, plaintiff must show (1) that he engaged in protected opposition to discrimination; (2) that he suffered an adverse action contemporaneous with or subsequent to such opposition; and (3) a causal nexus between the protected activity and the adverse action employment action. Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006) (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006)). Defendant argues that plaintiff cannot establish any of these elements.

With regard to the first element, defendant argues that plaintiff did not engage in protected activity, but that he refused to cooperate in an investigation of sexual harassment made against him. Based on the record, however, a jury could find that plaintiff's statement during the investigation that a co-worker had made sexual comments to him and touched him inappropriately could be deemed a complaint of sexual harassment.

As to the second element, defendant asserts that plaintiff did not suffer a materially adverse action under the reasonable employee standard. In the pretrial order, plaintiff alleges only one retaliatory action by Via Christi – the letter of March 23, 2005 which responded to plaintiff's letter of February 20 alleging misconduct by Via Christi staff. Defendant's letter stated that because plaintiff refused to provide information about the allegations, defendant could take no action except to place plaintiff's letter in his file. The letter also cautioned plaintiff that "any information you decide to divulge can be considered retaliatory and may violate the Federal HIPAA laws." Although plaintiff asserts that this letter constitutes adverse employment action, no reasonable person could

---

[4] Alternatively, defendant asserts that it is entitled to summary judgment because plaintiff has not shown that defendant knew or should have known of sexual harassment by coworkers and that it failed to take prompt remedial action. Under Title VII, an employer may be liable for sexual harassment committed by one employee against another if it knew or should have known about the conduct and failed to stop it. See Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765. Via Christi argues that it had an anti-harassment policy which it communicated to plaintiff and that plaintiff cannot show that he took advantage of this policy.

find the act of sending the responsive letter an adverse action. Defendant is entitled to summary judgment on plaintiff's retaliation claim.

Finally, even if plaintiff could state a prima facie case of retaliation, Via Christi states a non-retaliatory reason for sending the letter—namely, plaintiff had written Via Christi a letter seeking a response to several of his concerns, and Via Christi was simply responding. Plaintiff has pointed to no evidence that Via Christi's stated reason for sending the letter was a pretext or cover-up for unlawful retaliation.[5]

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #73) filed March 19, 2007 be and hereby is **SUSTAINED**.

Dated this 13th day of June, 2007 at Kansas City, Kansas.

s/Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[5] Plaintiff's EEOC charge stated that during the investigation the human resources representative "displayed very intimidating behavior toward me . . . which led to my self termination. I believe my self-termination amounts to a constructive discharge." Complaint (Doc. #1), Attachment at 8. The pretrial order does not include a claim for retaliatory or constructive discharge, however, and plaintiff has therefore abandoned any such claim. See Hullman, 950 F.2d at 667. Moreover, plaintiff can not show that a reasonable person in his position would have believed the request to cooperate in the interview created working conditions so intolerable that he had no other choice but to quit. Cf. Stubbs v. McDonald's Corp., Nos. 03-2093 & 04-2164, 2006 WL 1722267, at *13-14 (D. Kan. June 20, 2006) (plaintiff did not show that workplace was intolerable; court found that he voluntarily resigned from employment).